UNITED STATES, Appellee

v.

CHARLES E. SMITH, Sergeant, U. S. Air Force, Appellant

2 USCMA 440, 9 CMR 70

COL Kenneth B. Chase, USAF, and MAJ Harry T. Dykman, USAF, for Appellant.

COL Wendell C. Dreier, USAF, CAPT William E. Shannon, USAF, and CAPT Giles J. McCarthy, USAF, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Despite his plea of not guilty, appellant was convicted by general court-martial, convened at Wiesbaden, Germany, under three specifications alleging offenses in violation of Article of War 94, 10 USC § 1566, and sentenced to receive a bad-conduct discharge, to be confined at hard labor for twelve months, and to forfeit $50.00 per month for twelve months. Apart from suspension by the convening authority of the execution of the punitive discharge, the findings and sentence have been approved by the convening authority and affirmed by a board of review. Although the offenses charged occurred before May 31, 1951, the trial was held after that date, and is to be dealt with according to the procedural provisions of the Uniform Code of Military Justice, 50 USC §§ 551–736, and the Manual for Courts-Martial, United States, 1951.

In substance, the first specification alleged larceny, on or about March 19, 1951, of approximately 300 gallons of gasoline, property of the United States. The second charged a further larceny, on or about March 28, 1951, of approximately 400 gallons of gasoline, property of the United States. And the third charged wrongful sale, on or about March 20, 1951, of approximately 300 gallons of gasoline, property of the United States. Further facts are unnecessary to a proper understanding and consideration of the question presented.

Appellant assigns as error the failure of the law officer personally and directly to instruct members of the court-martial on the elements of larceny, the offense laid in Specifications 1 and 2. No objection is made to the law officer's instructions concerning the wrongful sale alleged in Specification 3. The basis for this assignment of error is as follows.

During the course of his closing argument, defense counsel spelled out in detail the constituent elements of larceny, observing as he did so that he was "sure that the law officer will do it at the proper time." Upon conclusion of his argument the court recessed for lunch. When it reconvened an hour and ten minutes thereafter, the law officer proceeded to instruct the court as to the elements of the offenses charged. He stated, with respect to the larceny specifications, that the accused was charged with "the alleged stealing of certain specified amounts of gasoline of some value specified, furnished for and intended for the military service and property of the U.S." Then he said:

"... Now I am going to eliminate any prolonged discussion as to the necessary elements of proof. Those portions of the Manual for Courts-Martial 1949 and 1951 as were read by defense counsel correctly state the elements of proof. If the court wishes them re-read, they can re-open the court and we will have them read, but I don't seek to prolong this particular phase of the case. ..."

Thereupon the law officer referred the members of the court to specific paragraphs of the Manual for Courts-Martial, US Air Force, 1949.

After completing his instructions, the law officer asked whether either counsel had "any further requests or desires." Trial counsel said: "The prosecution has none"; and defense counsel replied: "The law officer has adequately covered the instructions in the case."

It is our conclusion that defense counsel below, by expressly and unequivocally acquiescing in the law officer's instructions, has waived any right to now claim prejudicial error based on deficiencies in those instructions.

In view of the fact that the requirement of instructions on the elements of the offenses charged is new to military criminal law, and also because we have interpreted Article 51 of the Code, 50 USC § 626, requiring instructions, to be a fundamental right, inherent in military due process, that must be fully complied with in every case, we have been reluctant to resort to the doctrine of waiver in relation to inadequate or erroneous instructions. However, we have noted in previous opinions that defense counsel cannot, at the trial, assume that he has no responsibility whatsoever for protecting the interests of the accused and insuring the fair and orderly administration of justice by raising appropriate objections to improper procedures. In United States v. Masusock, (No. 15), 1 CMR 32, decided November 9, 1951, we said that to continually countenance failure of defense counsel to meet his responsibilities and obligations would "result in an inefficient appellate system, interminable delays in the final disposition of cases, and careless trial representation." In United States v. Russell L. Williams, (No. 133), 2 CMR 92, decided February 21, 1952, we stated as follows:

". . . where a law officer fails to instruct properly without objection by defense counsel such counsel may well be proceeding at his peril in view of the further statutory provision that a finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially affects the substantial rights of the accused. It is entirely conceivable that the instructions of a law officer in a particular case may not be entirely correct, but at the same time the showing of record may be such, that regardless of the error, there could be no substantial prejudice to the accused. For that reason we cannot emphasize too strongly the necessity of objection at the proper time. . . ."

We fully recognize that there are differences between military and civilian criminal trials which militate against applying in the military sphere any strict waiver rule such as is enforced in the majority of American jurisdictions. Also because of these differences, we feel that even Federal decisions on the effect of failure to object to erroneous instructions, while persuasive, are not and cannot be binding upon this Court. Cf. United States v. Manton, 107 F2d 834 (CA2d Cir); Johnson v. United States, 318 US 189, 87 L ed 704, 63 S Ct 549. Complete, correct instructions on the elements of the offenses charged are a fundamental and vital right, absolutely necessary to the fair dispensation of justice in court-martial trials. However, we are not willing to see court-martial trials become a game where the sly defense counsel can acquiesce in erroneous instructions merely to build a record for obtaining reversal on appeal. Defense counsel does justice neither to the accused nor to his duty as an officer of the court when he relies principally on error and appellate review to protect his client.

For the reasons set out above, we are disposed to hold that where defense clearly and unequivocally assents to minimal instructions, he will not be heard thereafter to claim error in relation to those instructions. We must make it clear, however, that this doctrine is and must be limited in view of the fundamental nature of the right under consideration. We are not to be understood as saying that mere failure to object will constitute a waiver to improper instructions. Nor do we here decide that a complete failure to instruct could be waived by defense. In

442

this case, the elements of the offense were read by defense counsel. The law officer personally approved and adopted the language of the Manual as read to the court by defense counsel, personally stated the elements in part, and then asked defense if he was satisfied with the instructions. Defense replied, as already noted, that "The law officer has adequately covered the instructions in the case." Under these circumstances, we are constrained to hold that defense affirmatively and expressly assented to and adopted the instructions given by the law officer, and cannot now claim error based on those instructions.

It is a fundamental concept that guilt or innocence should be determined in the trial forum. Implicit in our system is the theory that, if a trial is fairly conducted in compliance with the rules of evidence and with all procedural requirements, the guilty will be convicted and the innocent will go free. Our ultimate aim is to improve, so far as possible, the trial of cases in military courts, in accordance with the policies expressed by Congress in the Uniform Code of Military Justice, supra. This aim cannot be achieved until those primarily connected with the trial—law officer, trial counsel, and defense counsel—perform their duties, competently, intelligently, and zealously. It is particularly a duty of the defense counsel to see that the theory or theories of the case most favorable to his client are adequately presented to the court. Not only must he be prepared in advance to argue for the submission of a proper framework of law to the court members, he must, as well, be prepared to submit proposed instructions to which the defense view of the evidence can be fitted. In the long run, he will do more to advance the interests of his client by submitting and arguing for proper and complete instructions than he will by sitting idly, letting the law officer's instructions pass as a formality, and then relying on appellate tribunals to correct any errors that may have crept in.

This disposes of the sole issue present in this case. The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

In the case of United States v. Masusock, (No. 15), 1 CMR 32, decided by this Court November 9, 1951, we adopted the following principles of law announced in Smith v. United States, 173 F2d 181, 184 (CA 9th Cir):

"It is without question true that in a criminal case the ultimate issue is the guilt or innocence of the accused, to be determined by a fair trial and not the competence of counsel, but it cannot serve the purpose of justice to permit a defendant to prosecute one theory in the trial court and, finding it unsuccessful, not only to substitute another on appeal but to claim error arising out of that which he himself has invited. The admitted normal rule is that an appellate court will not consider matters which are alleged as error for the first time on appeal, and this is true of criminal as well as civil cases. However, an exception exists in criminal cases where the alleged error would result in a manifest miscarriage of justice, or would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.' [citing United States v. Atkinson (1936) 297 US 157, 160.]"

That case was decided early in the Court's history and if it was good law then, it is good law now. Accordingly, if we follow that rule we need only test this case to determine whether the error, if any, was of such a substantial nature that failure to consider it would result in a miscarriage of justice or seriously affect the fairness or integrity of the trial proceedings.

As I view the record a relatively unimportant and insignificant event in the trial of a law suit seems to have been magnified on appeal out of all proportion to its importance. To support this statement I recite briefly the facts and circumstances shown by the record. After the taking of evidence had been completed and the trial counsel had made his opening argument to the court, defense counsel, who, by the

way, appears to have been well qualified and who performed a very excellent job in defending his client, presented his arguments to the court. I quote from his statement:

"... Now at this point I want to read to the court the essential elements of proof required for these offenses. I'm sure that the law officer will do it at the proper time, but I want to call it to the court's attention. The essential elements of proof are in Manual for Courts-Martial, 1949 under 180g, page 240. Here are the essential elements which must be proved for the allegation of larceny— they are: '(a) the appropriation by the accused of the property as alleged; (b) that such property belonged to a certain other person named or described; (c) that such property was of the value alleged, or of some value; and (d) the facts and circumstances of the case indicating that the appropriation was with the intent to deprive the owner permanently of his interest in the property or of its value or a part of its value.' And then further—going back to 181h which refers you to 180g for elements of proof—on page 252 it states a last elements of proof: 'and that the property belonged to the United States and was furnished or intended for the military service thereof, as alleged'. . . ."

The record shows that copies of the Manual had been furnished members of the court and obviously they could turn to the pages from which defense counsel was reading. No one took issue with the statements made by him and the reason for that is apparent. It is true that the law officer did not again read the elements from the Manual but I fail to understand why that is necessary or prejudicial. All the law officer needs to do is make certain the court accepts his definition of the crime and this is what he told the court:

"... Going back to the offenses charged, the accused is charged with three offenses, two of which concern the alleged stealing of certain specified amounts of gasoline of some value specified, furnished

for and intended for the military service and the property of the U. S. Now I am going to eliminate any prolonged discussion as to the necessary elements of proof. These portions of the Manual for Courts-Martial 1949 and 1951 as were read by defense counsel correctly state the elements of proof. If the court wishes them re-read, they can re-open the court and we will have them read, but I don't seek to prolong this particular phase of the case.

•  •  •  •  •  •

"... Now the defense counsel, in quoting from the manual for 1949 as to the elements of the larceny, correctly stated those elements in reading from the manual, part from pages 240 and 241 and some from page 252. . . ."

The law officer then specifically asked each counsel if he had any further requests or desires and defense counsel stated "The law officer has adequately covered the instructions in the case." It is now contended that if we do not hold the accused was prejudiced, we lack appreciation of the calibre of counsel appointed to defend the accused in the military system. Without debating the fairness or unfairness of the charge it is my belief that if we are to assist in building a good military judicial system, we must place responsibility on all three principal lawyers participating in the trial of the case, namely, the law officer, trial counsel, and defense counsel. I do not believe the present act contemplates a paternalistic system in which the law officer must be charged with all the delicts of defending counsel. The latter has a definite and primary responsibility to represent properly his client. We cannot require the law officer and trial counsel to be experts and excuse defending counsel on the theory that he must not be charged with a rudimentary knowledge of the law. All three are from the same schools and victims of the same system. Clearly the law officer has a duty to insure a fair and just trial but he does not represent either party and he should not become an advocate for or against an accused. As I understand his functions,

he is to protect the interests of both parties. The advocates are trial and defense counsel. If perchance defending counsel as a class are inferior to other counsel, a charge I am not prepared to make, then we do not insure improvement by placing the blame for their shortcomings solely on the law officer. On the contrary, so long as we insist on his performing their duties for them, or we reverse cases without regard to the manner in which they perform their tasks, we can expect little improvement in their service.

I am at a loss to understand why the placing of some responsibility on defending counsel becomes so acute in this case. We have affirmed previous cases on the grounds that accused's counsel had waived his right to complain and we need have little misgivings about exacting a waiver in this case. The only thing that was waived was the right to require the law officer to adopt a particular method of giving to the court the essential elements of the offense. The Manual was before the members, they were referred to the specific pages of the book by both defense counsel and law officer, counsel for the accused read the essential elements from the Manual, and when the law officer instructed the members of the court, he referred them to the identical pages and paragraphs and told them they had been given the correct elements of the offense by the defense counsel, but that if any one wished them restated it would be done. Apparently everyone at the trial level was satisfied the court-martial members had been authoritatively told the elements of the offense and that it was not necessary to have them reiterated. Furthermore, it is a reasonable assumption that unless members well knew the guideposts that would limit them in their consideration of the particular offense involved, a request would have been made that the law officer repeat the charge. In view of this, can it be seriously contended that we are permitting an untrained lawyer to waive one of the historic cornerstones of our system of military jurisprudence? I would not believe so when all defense counsel needed to determine was the likelihood

of the court members remembering the elements as he read them.

I prefer to advance one step further and test this case to determine whether our ruling brings about any miscarriage of justice. No one suggested the evidence was insufficient, so we need only be concerned with the possibility of the accused being prejudiced by instructional deficiencies. The principal purposes in giving instructions as required by the Code may be summed up as follows: (1) So the members of the court will be given the law governing the particular case by the law officers; (2) so they may apply the facts to the law as announced; (3) so that accused and his counsel may hear the instructions and know that the court-martial is instructed correctly; (4) so that counsel may be afforded an opportunity to except; (5) so counsel may have an opportunity to suggest corrections; and (6) so that each member of the court-martial will actually receive the instructions. If we measure the procedure adopted by the law officer by those requirements, we find it sufficient to meet the test. This, for the reason that the elements of the offense were read to the members of the court and they could apply them to the facts; accused and his counsel heard each and every instruction given; there was no necessity for defense counsel excepting as he wrote his own formula for the offense; amplifying or modifying instructions could have been requested if desired; the law officer placed his stamp of authority upon the elements necessary to be found before a finding of guilty could be returned; and each member of the court fairly knew and understood those essential elements. While the method used was not the best, an unorthodox method does not in and of itself prejudice an accused. Neither does it rot away a cornerstone of military justice. But much more to the point, if counsel for an accused is satisfied that the method used is adequate to instruct fairly the court, and so announces in open court, I do not hesitate to enforce a waiver. I would only be reluctant to do so if the record show that the particular counsel was so lacking in qualifications that his defense

affected substantially the fairness of the proceedings so that a miscarriage of justice would result from an affirmance. No such showing is made here.

BROSMAN, Judge (concurring in part and dissenting in part):

I dissent from the view of my brethren as to the propriety of applying the doctrine of waiver to the facts of the instant case. In United States. v. Clay, (No. 49) 1 CMR 74, decided November 27, 1951, this Court determined unanimously that the right of accused persons to trial by court adequately instructed by the law officer on the principles of law applicable to his case is derived from "one of the historic cornerstones of our system of civil jurisprudence," and is safely within the concept of "military due process of law," secured by the Uniform Code of Military Justice. Today my two colleagues have held that Smith's right to this element of "military due process" was waived by the action of counsel assigned to defend him at the trial. I am much afraid that the attitude this approach reflects will lead inexorably to a future course of decision based almost wholly on a theory of waiver. For this reason I am compelled vigorously to disassociate myself from it.

Accepting as we must—unless Clay is to be overruled—that the right of an accused person to proper and adequate instructions is one of prime, basic, and fundamental importance, we must exercise care to avoid acceptance of every suggestion of waiver. Although, concededly, the privilege to object to instructions given, refused or omitted may be the subject of waiver, United States v. Strong, (No. 244), 5 CMR 55, decided August 27, 1952, waivers of substantial rights "are not lightly to be accepted." United States v. Evans and Parker, (No 457), 4 CMR 133, decided August 8, 1952. We have not heretofore been receptive to arguments based on waiver, and advanced in cases involving precisely the right involved here. United States v. Russell L. Williams, (No. 133), 2 CMR 92, decided February 21, 1952; United States v. Cromartie, (No. 374), 4 CMR 143, decided August 6, 1952; United

States v. Strong, supra. This is, in fact, the first case of this nature in which the Court has been willing to accept the principle of waiver. as the basis for its decision. It is, therefore, one of genuinely landmark character.

There is no doubt that at some indeterminate future time—when the recently adopted provisions and practices of the Uniform Code and the 1951 Manual have become fully settled, and have been accepted wholeheartedly by all elements of military command—we may and perhaps should relax what I regard as the attitude towards waiver enjoined upon us by stern duty at this time. Whether our approach to fundamental rights of the sort here involved should ever be relaxed need not, of course, be decided now. In addition, whatever the eventual attitude of this Court may be, I am inclined to doubt that it should ever hope to adopt a waiver position identical with that found in many civilian jurisdictions. This Court and those below us are tribunals charged with the administration of *military* justice—and this single distinguishing factor will ever require sharp procedural differences from civilian counterparts.

Several factors cannot be forgotten in this connection, but must be considered honestly and realistically. Military defendants, particularly those in overseas theaters, are represented almost universally by assigned counsel and, in fact, are rarely able, for one compelling reason or another, to secure the services of civilian lawyers. Grave practical difficulties, indeed, often beset the path to securing individual military counsel. In special court-martial cases, assigned counsel today need not at all be qualified attorneys—and frequently are not. In truth, in some services—and in certain situations in all services—they are *not* almost invariably— this for what are believed to be pressing reasons of practical necessity. The tremendous importance of this latter observation's bearing on the present problem can hardly be overemphasized —for, if we make law at all, we make it for every tribunal below us in the pyramid. Additionally, it must not be

forgotten that, *until the present Uniform Code went into effect less than two years ago, it was not a requirement of military law that counsel at the bar of even a general court-martial need be lawyers.* Not unnaturally, under this former regime—and for the soundest of reasons—the doctrine of waiver played a virtually nonexistent role, and errors were freely considered on appellate review without any sort of regard to their preservation below. Today, of course, and fortunately, counsel in general courts-martial—where cases involving more serious criminal offenses are tried—must be lawyers, and The Judge Advocates General of the several services, together with their senior officers, are attempting to meet new and heavy responsibilities in a fashion which is warmly admirable and increasingly successful. However, granting the best will in the world, the task of complete conformity to the demands of the new system has not yet been fully accomplished—as, I am sure, service authorities will acknowledge as readily as I. A tradition ingrained in command for a century and a half is not to be wholly dissipated in a matter of months!

Moreover, we must not omit from our thinking the collateral character of the assignment as court-martial counsel in many instances, and the extremely difficult—often emergency—conditions under which this onerous duty is performed, particularly in overseas, and certainly in combat, areas. All of these factors must be taken into account—not critically, but understandingly, and with a genuine appreciation of the problem involved. Considering them, together with others of a relatively minor character, I am not inclined to believe as a general proposition—and quite apart from the immediate situation before us—that accused persons should be held completely accountable, just yet at any rate, for the representations and other conduct of assigned military counsel. It will not be denied, I am sure, that the run-of-the-mill of these latter are, at present and inescapably, young in years, junior in military grade, and without substantial professional experience in the civilian community.

Extended logically, the position of the majority of the Court here places a tremendously heavy—perhaps the primary—responsibility for ensuring justice in the military scene on the shoulders of defense counsel. Under the majority's approach, the law officer may proceed in the trial's administration with virtual impunity, secure in the knowledge that this Court will refuse to examine errors, however serious, unobjected to by defense counsel at the trial. As I see it, it is—or should certainly be at present—the law officer himself who carries the major burden of guaranteeing that justice is done at the trial level in all cases. The majority allows him to abdicate this all-important function. This Court—my brothers appear to overlook—has two principal duties: (1) To establish a sound decisional framework for operations under the Code and the Manual. (2) To ensure that essential justice has been dispensed in every case that comes before it. Neither of these two branches of its function should be sacrificed in the service of the other—each is of equal importance. The opinion and decision in this case—as I see it—advance neither. In fact they accomplish quite the reverse.

Of course, two avenues are available which lead to the establishment for the military of a legal system as like that of civilian courts as possible. One—apparently that chosen by my brethern—involves the adoption of the position that the system *is now* established, fullblown and mature, and must be regarded and treated as such. Thus, defense counsel are required to take affirmative and definite positions with regard to instructions, with the result that, on failure to do so, otherwise valid objections are waived and forever barred from consideration on appeal. The premise for the adoption of this approach of strict waiver is that such austerity will result in the correction of current deficiencies of defense counsel. The overriding difficulty with this basis is simply and plainly that it puts the cart before the horse. It assumes the existence of an incentive prompting defense counsel to take heed of our severity. I am unable to perceive the source and nature of that incentive in the current

**447**

state of judicial maturity in the court-martial system, and elsewhere in military-legal thinking.

The second highroad—and the one I much prefer—involves affording accused persons the benefit of the doubt, and, except where objection is specifically *required* by Code or Manual, reviewing here all possible errors reflected in the record, even though not expressly preserved by objection—save where it is perfectly clear that an informed choice was made by defense counsel. This course is, I submit, the surest pathway to the end we seek, and one much less harmless to individual rights during the course of development. If officials at the trial level—and particularly the law officer—know that we stand ready to review errors not necessarily preserved by civilian technical niceties, there *is* an incentive to comply with the law—the prompting of a desire not to be reversed on appeal. And this is a reasonably powerful spur.

With these observations, I turn to the instant case. As has been suggested, where fundamental rights are concerned—such as the one here involved—I had thought that we had previously agreed that the conduct asserted to constitute a waiver must be such as evidences a *knowing* action, a "relinquishment of rights" with *full* understanding of the consequences. Waivers of such rights "are not lightly to be accepted." United States v. Evans and Parker, supra; Johnson v. Zerbst, 304 US 458, 464, 82 L ed 1461, 1466, 58 S Ct 1019, 146 ALR 357. In United States v. Strong, supra, defense counsel, in response to the law officer's inquiry whether either counsel had additional instructions or suggestions, stated merely: "The defense does not." In the case at bar, however, defense counsel replied: "The law officer has adequately covered the instructions in the case." There *is* certainly a difference —for the response of defense counsel here has distinctly an affirmative ring, wanting in that of defense counsel in the Strong case. However, the language of counsel in the instant case must be evaluated in its proper setting.

The statement of defense counsel here was made in an *overseas* theater on August 6, 1951, approximately *two months* after the effective date of the Uniform Code of Military Justice and the Manual for Courts-Martial, United States, 1951—and long *before* this Court had spoken in a single case on the subject of instructions. The requirement of instruction by the law officer in open court concerning the elements of the offense charged was one of the substantial and striking innovations in military judicial procedure provided by the Code and Manual. Under the older practice, where the law member participated in the court's closed session deliberations, he was ever present to advise other members on the elements of the offense. Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 40. In opinions of this Court we have repeatedly made clear the mandatory character of the duty of the law officer to give proper instructions, and have explicitly recognized the paramount importance of the right of accused persons to have the court charged, as demanded by the Code and current Manual. Is there the slightest indication, circumstantial or otherwise, that defense counsel here properly understood the consequences of his affirmative declaration? I am sure that there is none whatever. True, he did suggest at one point in his closing argument that the law officer would instruct members of the court on the elements of larceny— but this means little in face of his ultimate affirmance of the law officer's complete abdication of the duty to instruct. At that time defense counsel may well have regarded the obligation to charge as of but slight importance—for indeed both the convening authority and the board of review, which considered a similar problem in United States v. Clay, supra, concluded that the erroneous instructions in that case did not operate to the substantial prejudice of the accused for the reason that there was sufficient evidence of guilt in the record. We there rejected this view emphatically on the ground that the right to have the court instructed fully was one of those rights secured to all accused military personnel by the Code's guarantee of "military due process."

448

The net of these comments is that I cannot at all regard the questioned statement of defense counsel here as a "waiver" because it is highly improbable that it was made with any sort of appreciation of its possible consequences. It is certainly not my intention to imply that an erroneous calculation by counsel as to the effect of trial action will excuse in all cases. However, during the initial stage of the current dispensation of military justice, and especially in the present case, I must refuse in the interest of individual rights, to erect barriers against an accused through action of counsel, *of necessity without full opportunity at the time* to grasp the significance of one of the most important contributions of that scheme.

It appears that my analysis of the present problem is supported by the following quotation from the 1951 Manual, found in paragraph 154d, at page 297:

"The prosecution or the defense may in open court either orally or in writing waive an objection to the admissibility of offered evidence. Such a waiver adds nothing to the weight of the evidence nor to the credibility of its source. The court in its discretion may refuse to accept, and may permit the withdrawal of, any such waiver. There is no prescribed form for making a waiver. Thus, *if it clearly appears that the defense or prosecution understood its right to object,* any clear indication on its part that it did not desire to assert that right may be regarded as a waiver of the objection. However, a waiver of an objection does not operate as a consent if consent is required, and a mere failure to object does not amount to a waiver except as otherwise stated or indicated in this manual." [Emphasis supplied].

It is observed, of course, that the foregoing passage has reference only to the waiver of a right to object to the admission of evidence. It is also to be noted, however, that the Manual is significantly silent on the subject of waiver of the right to have the court-martial instructed on the elements of the offenses charged. Most certainly it is impossible to defend a looser approach to protection of the latter right—declared by this Court to be an element of military due process—than that commanded by the Manual as to a mere matter of objection to evidence!

Reference must be made to a further point made in the majority opinion. There it is said that a court-martial trial should not be permitted to "become a game where the sly defense counsel can acquiesce in erroneous instructions merely to build a record for obtaining a reversal on appeal." This caveat is just as sound as a bell, and I approve it warmly. However, the following observations may be made. (1) If a competent law officer is utilized, and if he does his job and assumes the responsibilities which are, in the last analysis, his, there is small likelihood of the danger envisioned by my brethren. (2) "Slyness" on the part of trial defense counsel is a quality of which I have seen virtually none in the many hundreds of records I have read during the period of my connection with this Court. (3) For whatever it is worth, it should be pointed out that defense counsel at the trial almost never represents the accused at any upper-level review proceeding. At the moment I can recall no single case in which the accused was represented before this Court by his counsel at the trial.

Of course, the instruction given in this case was manifestly insufficient in so far as it sought to incorporate by reference comments of defense counsel. The *law officer* is required to instruct members of the court. Uniform Code of Military Justice, Article 51(c); Manual for Courts-Martial, United States, 1951, paragraph 73; United States v. Clay, supra; United States v. Bobby L. Keith (No. 226), 4 CMR 36, decided July 3, 1952. We have made it clear that reference by the law officer to appropriate Manual paragraphs will not operate to fill gaps in his instructions. United States v. Gilbertson, (No. 318), 4 CMR 57, decided July 22, 1952; United States v. Cromartie, (No. 374), 4 CMR 143, decided August 6, 1952; United States v. Strong, (No. 244), 5 CMR 55, decided August 27,

1952; United States v. Moreash, (No. 715), 5 CMR 44, decided August 27, 1952; United States v. Kubel, (No. 229), 5 CMR 73, decided August 29, 1952. In United States v. Berry, (No. 69), 2 CMR 141, decided March 18, 1952, we ruled that the failure of the law member of a general court-martial to exercise certain of the functions imposed upon him by law, which had been usurped by the president of the court, was error requiring reversal. Here there was no third party usurpation of the law officer's duty to instruct—he simply abdicated it in favor of defense counsel, which practice, to my mind, is fully as undesirable in nature—although certainly not in degree—as that found in the Berry case.

Moreover, the Government argues that—reference to the statements of defense counsel aside—the instructions as to larceny, read as a whole, properly apprised the court of the elements of that offense. We have noted earlier that where there is apparent instructional confusion "we are required to look at the charge as a whole and determine whether the court was clearly, fully, and fairly instructed." United States v. Roman, (No. 191), 2 CMR 150, decided March 19, 1952; United States v. Shepard, (No. 343), 4 CMR 79, decided July 25, 1952. Appraising the instructions of the law officer as regards *larceny* in the instant case in accordance with this standard, the best that can be said for their language is that only in the most general way may it be said to delineate the elements of the offense. This is insufficient. *Standing alone,* and aside from those matters mentioned immediately hereafter, it falls far short of meeting the mandatory standards of Article 51(c) of the Uniform Code, supra. United States v. Welch, (No. 318), 4 CMR 57, decided May 27, 1952; United States v. Gilbertson, supra.

As noted above, the right of the present accused to instructions is included within his guaranty of "military due process." United States v. Clay, supra. However, I also observe that the larceny comprising the content of Specification 1 and the wrongful sale underlying

**450**

Specification 3 relate to identical gasoline. In this respect the case is similar to United States v. Kubel, (No. 229), 5 CMR 73, decided August 29, 1952, in which the accused, in separate specifications, was charged with the larceny and sale of a specified number of blankets. There the law officer neglected to charge the court explicitly concerning two elements of larceny, namely, the value of the property and the necessity for an intent permanently to deprive the United States thereof. Only the instructions as to larceny were assailed at the bar of this Court—no objection having been taken to those treating of wrongful sale. Recognizing the unique character of the situation presented—and in no way intending to retreat from our position in the Clay case—we ruled in Kubel that, because the charge in the case of the sale was proper, the court was required to find—and must have found, pursuant to the instructions there given—the very elements omitted from the larceny charge. Of logical necessity those elements must have been found in convicting the accused of the wrongful sale.

There is very little—if any—difference between the Kubel case and that at bar in so far as Specifications 1 and 3 of the latter cause are concerned. In the former, the court was advised that it must conclude that the accused "appropriated" the property as alleged, and that the property "belonged to the United States and was furnished or intended for the military service thereof." In this case, the law officer informed the court that the accused had been charged with "the alleged stealing of certain specified amounts of gasoline of some value specified, furnished for and intended for the military service and property of the United States." It is readily apparent that each left the members of the court uninstructed in the same elements of the offense of larceny, that is, the value of the property involved and the intent permanently to deprive the United States thereof. Here, as in Kubel, the same property was the subject of a charge of larceny (Specification 1) and a charge of wrongful sale (Specification 3). The sale—which was the subject of proper and

complete instructions—necessarily required the establishment of an intent to deprive the Government of the property permanently without its knowledge. The finding of wrongful sale, perforce, also required a finding that the value of the property was as alleged. We, therefore, must conclude, as we did in Kubel, that the court was required by the totality of instructions to find, and in point of fact found, each of the elements of the larceny alleged in Specification 1.

Of course, I am not to be understood as placing my stamp of approval on the instructions in this case as they pertain to Specifications 1 and 3. Desirable practice would indeed demand in cases where an accused is charged with larceny, and at the same time with wrongful sale of the same property, that explicit instructions be given concerning the elements of each offense. Nor am I to be understood as arguing that there was no prejudice to appellant for the reason that there was sufficient *evidence* of his guilt. It should be made clear that my conclusion here is based on the peculiar circumstances of this case, and solely on the presence of a total instructional picture which meets —but barely meets—minimum standards. In no sense do I support findings of guilty under Specification 1 because —apart from the question of instructions—they were based on sufficient *evidence*. This was not our view in Kubel, and it is not my view here.

The foregoing does not dispose of appellant's conviction of larceny under Specification 2. No wrongful sale of the property there involved was charged, and we have with respect to this specification no Kubel situation. Therefore, the absence of instructions on the elements of the larceny alleged in Specification 2 would require that the conviction based thereon be set aside. United States v. Clay, supra.

. Accordingly, in my view, the convictions under Specifications 1 and 3 should be affirmed, and that predicated on Specification 2 reversed.