*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee

**v.**

### Michael J. RICH, Senior Airman
United States Air Force, Appellant

**No. 19-0425**

Crim. App. No. 39224

Argued March 16, 2020—Decided April 28, 2020

Military Judge: Vance H. Spath

For Appellant: *Captain David A. Schiavone* (argued); *Major Meghan Glines-Barney*.

For Appellee: *Captain Kelsey B. Shust* (argued); *Colonel Shaun S. Speranza*, *Lieutenant Colonel Brian C. Mason*, and *Mary Ellen Payne*, Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, SPARKS, and MAGGS, joined.

———————————

Judge OHLSON delivered the opinion of the Court.

A panel composed of officer members sitting as a general court-martial convicted Appellant, contrary to his plea, of one specification of sexual assault by false pretense in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for sixty days, reduction to the grade of E-2, and a reprimand. The convening authority approved the adjudged sentence. *United States v. Rich*, 79 M.J. 572, 575 (A.F. Ct. Crim. App. 2019) (en banc). The United States Air Force Court of Criminal Appeals set aside the findings and sentence and authorized a rehearing. *United States v. Rich*, 78 M.J. 591, 601 (A.F. Ct. Crim. App.

---

[1] The panel members found Appellant guilty of "commit[ting] a sexual act upon [CS], to wit: penetrating her vulva with his penis, by inducing a belief by concealment that the accused was another person." They excepted from the original specification the words "artifice and pretense."

2018), *rev'd en banc*, 79 M.J. at 575. The Government timely filed a motion for reconsideration en banc, which the Court of Criminal Appeals granted. The original panel decision was vacated when the court granted the Government's motion for reconsideration. *Rich*, 79 M.J. at 575 n.2. Because the Court of Criminal Appeals was evenly divided 4–4 following the en banc rehearing, the approved findings and sentence were affirmed.[2] *Id*. at 589.

We granted review on the following two issues:

> I. Did the Court of Criminal Appeals err when it found that mistake of fact as to consent is not a special defense "in issue" for the offense of sexual assault by inducing a belief by concealment that Appellant was someone else?

> II. If mistake of fact was not a special defense "in issue," did the military judge abuse his discretion by denying the defense request for an instruction on mistake of fact?

*United States v. Rich*, 79 M.J. 335 (C.A.A.F. 2019) (order granting review). However, because Appellant affirmatively waived any instructional error in this case, we cannot reach the merits of the granted issues, and thus affirm the decision of the court below.

## I. Facts

### A. Sexual Assault by False Pretense

Following an evening of drinking at various bars in Grand Forks, North Dakota, Appellant, Airman First Class CS, and CS's boyfriend, Airman First Class BK, returned to Appellant's off-base apartment to spend the night. CS and BK slept on the couch downstairs, and Appellant slept in his bedroom upstairs. The three agreed that when Appellant woke up to

---

[2] When a service court of criminal appeals "is evenly divided on a question of law," the result is an "affirmance of" the lower court's decision. *United States v. Ohrt*, 28 M.J. 301, 302–03 (C.M.A. 1989) (emphasis removed). Here, the original panel decision was vacated when the Court of Criminal Appeals granted the Government's motion for reconsideration, and thus the subsequent evenly divided Court of Criminal Appeals decision resulted in an affirmance of the findings and sentence as approved by the convening authority. *Rich*, 79 M.J. at 575.

attend weapons training, CS and BK would relocate to Appellant's bed to go back to sleep. Eventually, CS heard Appellant get in the shower, so she got into to his bed and went to sleep. BK decided to remain on the couch until Appellant left, and then planned to join CS in Appellant's bed.

CS woke up to someone "tugging" on her pants attempting to remove them, but the room was "really dark" so CS could not see who it was. Believing it to be her boyfriend, BK, CS said BK's name "in a nice loud tone." There was no response, and the tugging continued. CS removed her own pants, hoping it would make the tugging stop and allow her to go back to sleep. Next, CS felt a penis penetrate her vagina. CS said BK's name again, this time "a little louder" with a "more agitated" tone, and again, there was no response. When the person kissed CS on the mouth, she suddenly realized he was not BK and learned that he was actually Appellant. CS pushed Appellant off of her, and he said, "Oh shit. I am so sorry. I am so sorry. I'm drunk. I thought you were my fiancé. . . . Don't tell [BK]. Don't tell [BK]."

At trial, during closing arguments on findings, Appellant advanced two theories attempting to negate his criminal culpability for his actions: (1) CS knew she was engaging in sexual intercourse with *Appellant*, and she consented to sexual intercourse with him; or (2) CS consented to sexual intercourse with *BK*—not with Appellant—but Appellant mistakenly believed that CS had consented to sexual intercourse with *him*.

**B. Discussions Regarding Findings Instructions**

Throughout Appellant's court-martial, the military judge and the parties had several discussions regarding findings instructions. During an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session after voir dire and before opening statements, the military judge indicated that he had received proposed findings instructions from both parties, and that he planned to send a "very draft series of instructions" to the parties later that evening. The military judge then asked trial defense counsel, "[A]re you going to ask for a mistake of fact instruction?" Trial defense counsel replied, "Yes, sir." The military judge responded, "I'm not ruling on any of this. It's just that

it will help me as I work towards it." Trial defense counsel added:

> Consent and mistake of fact. We—our position is that those are not necessarily defenses in this case. They are more of elements that have to be proven on the front end because it's a—it's a broad charge, basically. So, the basis is specific intent.

The military judge reiterated, "That just helps me as [I] craft and finalize the instructions."

The next day, following the Government's and the defense's presentation of evidence, the military judge again conducted an Article 39(a), UCMJ, session to discuss findings instructions. The military judge informed the parties that he intended to instruct the members on consent. The military judge then asked, "Other than that, do you believe any defenses have been raised by the evidence that I should instruct on? Defense Counsel?" Trial defense counsel stated:

> Your Honor, I have not had a chance to look at the instructions you sent out honestly. However, with regard to mistake of fact, we believe it would be an appropriate defense—we believe it is wrapped into the charge itself, the way that it is charged. They have to prove that our client did not have a mistake of fact, so some language regarding mistake of fact may be appropriate. However, you may have already included it, and I just haven't looked at it.

The military judge replied, "I hadn't, because I don't know if [a] mistake of fact defense works in this fact pattern. I am trying to work through it." After discussing other possible instructions, the military judge told the parties:

> I will send out another version [of the findings instructions] tonight, that is likely the final version, subject to objections or requests for additional instructions. So, from both sides, please let me know by email. . . . [L]et me know when you get them and any suggestions or changes you have. . . . I am open to input tonight, as we work through the instructions. . . . [A]ny suggestions, comments you have tonight, once I send this out, I welcome them back.

That evening, the military judge emailed both parties the final version of his draft findings instructions. In response, trial defense counsel emailed the military judge and made

only one objection, which pertained to a proposed instruction regarding whether silence constitutes concealment. Beyond that, trial defense counsel stated in his email, "We did not have other objections or suggested changes to the proposed instructions."

The following day, the military judge held another Article 39(a), UCMJ, session to discuss findings instructions. The military judge summarized on the record the email responses he had received from the parties regarding his proposed findings instructions, and he expressly overruled the defense objection to the silence as concealment instruction. Next, the military judge said, "Both sides indicated they had no other objections or requests for additional instructions. I'm going to check. . . . Defense Counsel, I've noted the one objection. Any additional objections or requests for additional instructions?" Trial defense counsel responded, "No, Your Honor." Before calling the members back and issuing the final findings instructions, the military judge asked, "Defense Counsel, . . . [a]nything else we can take up . . . ?" Trial defense counsel responded, "No, Your Honor."

Later, when instructing the members, the military judge did not give an instruction on mistake of fact as to consent. Trial defense counsel neither objected nor requested such an instruction at that time.

## II. Applicable Law

Rule for Courts-Martial (R.C.M.) 920(e)(3) requires the military judge to include in findings instructions "[a] description of any special defense under R.C.M. 916 in issue." Mistake of fact may be a special defense under R.C.M. 916(j).

> If the military judge omits a required instruction that is reasonably raised by the evidence, the accused may preserve the instructional error either by making an adequate objection or by requesting an instruction in a way that sufficiently signals to the military judge the existence of an error in need of correction.

*United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017).

"While there are no 'magic words' dictating when a party has sufficiently raised an error to preserve it for appeal, of critical importance is the specificity with which counsel

makes the basis for his position known to the military judge." *United States v. Killion*, 75 M.J. 209, 214 (C.A.A.F. 2016) (citation omitted) (quoting *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999)). Notably, required findings instructions can be waived. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020)[3] (holding that the accused waived the issue of whether the mens rea of "knowingly" applies to the consent element of Article 120c(a)(2)); *United States v. Gutierrez*, 64 M.J. 374, 376 (C.A.A.F. 2007) ("[E]ven if an affirmative defense is reasonably raised by the evidence, it can be affirmatively waived by the defense.").

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo." *Davis*, 79 M.J. at 332 (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)). " 'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' " *Id.* (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). Stated another way, " 'A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law.' " *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)).

In the most recent *Davis* decision, this Court further clarified how waiver and forfeiture operate in the context of findings instructions. 79 M.J. at 332. A mere "[f]ailure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes" forfeiture. *Id.* (internal quotation marks omitted) (quoting R.C.M. 920(f)).[4] But, when counsel "affirmatively decline[s] to object" and "offer[s]

---

[3] There are two *Davis* decisions that are relevant to the disposition of the instant case: *United States v. Davis*, 76 M.J. 224 (C.A.A.F. 2017), and *United States v. Davis*, 79 M.J. 329 (C.A.A.F. 2020). For ease of reference, we will refer to the 2020 *Davis* decision as "the most recent *Davis* decision."

[4] R.C.M. 920(f) uses the word "waiver," but this Court has repeatedly interpreted that provision as referring to forfeiture, not waiver. *See, e.g.*, *Davis*, 79 M.J. at 332.

no additional instructions," counsel " 'expressly and unequiv-ocally acquiesce[s]' to the military judge's instructions," and his actions thus constitute waiver. *Id.* (quoting *United States v. Smith*, 2 C.M.A. 440, 442, 9 C.M.R. 70, 72 (1953)). "[W]hile we review forfeited issues for plain error, we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal." *Id.* (internal quotation marks omitted) (quoting *Campos*, 67 M.J. at 332).

### III. Discussion

An examination of Appellant's repeated discussions with the military judge regarding findings instructions clearly demonstrates that Appellant affirmatively waived any claim of instructional error in this case.

The first time the parties discussed findings instructions, the military judge asked, "Defense Counsel, are you *going to* ask for a mistake of fact instruction?" (Emphasis added.) Although Appellant answered in the affirmative, this response to a question that was prospective in nature was not sufficient to put the military judge on notice that the defense was actually requesting such an instruction. This is particularly true in light of the fact that trial defense counsel immediately also stated the following: "Consent and mistake of fact. . . . are *not necessarily defenses*" but "are more . . . *elements* that have to be proven on the front end [by the Government]." (Emphasis added.) Although "there are no 'magic words' " required to preserve an issue for appeal, we cannot conclude on these facts that Appellant adequately made "his position known to the military judge." *Killion*, 75 M.J. at 214.

The second time the parties discussed findings instructions with the military judge did not clarify matters. During an Article 39(a), UCMJ, session, Appellant explained that mistake of fact "is *wrapped into the charge itself*," argued that the Government must prove the absence of a mistake of fact, and averred that "some language regarding mistake of fact *may* be appropriate." (Emphasis added.) The Court of Criminal Appeals aptly characterized Appellant's "request" as "equivocal, non-specific, and half-hearted [in] nature." *Rich*, 79 M.J. at 586. Usually when requesting findings instructions, counsel will propose specific language and this Court will analyze that language in evaluating the request. *See, e.g.,*

7

*United States v. Bailey*, 77 M.J. 11, 13 (C.A.A.F. 2017); *Killion*, 75 M.J. at 212–13. Here, Appellant neither proposed specific language nor so much as made a generalized request for an instruction on the defense of mistake of fact as to consent. Once again, on these facts we cannot hold that the military judge was aware of the "basis for [Appellant's] position." *Killion*, 75 M.J. at 214.

In this particular instance, the military judge's response to trial defense counsel's statement is also instructive. The military judge did not *rule against* a mistake of fact as to consent instruction. Rather, he merely said, "I don't know if [a] mistake of fact defense works in this fact pattern. I am trying to work through it." He then invited the parties to offer "any suggestions or changes" to the final version of instructions he planned to email them later that evening, and made clear that the instructions were "subject to objections or requests for additional instructions." Thus, Appellant cannot now claim that he failed to pursue the mistake of fact instruction further because the military judge had already overruled his objection. This distinguishes the instant case from *Killion*, where this Court held that "there [was] no indication that further objection was likely to be successful" because "the military judge demonstrated his awareness of defense counsel's specific grounds for the alternative instruction, [and] flatly disagreed with him." 75 M.J. at 214.

The third discussion regarding findings instructions, which was memorialized in an email exchange between the military judge and the parties, solidifies the conclusion that Appellant waived any instructional error with respect to mistake of fact as to consent. In that exchange, Appellant clearly objected to the proposed instruction regarding whether silence constitutes concealment, but made no mention at all about the absence of a mistake of fact as to consent instruction. Moreover, trial defense counsel stated in his email, "We [do] not have any other objections or suggested changes to the proposed instructions." Thus, Appellant "affirmatively declined to object to the military judge's instructions and offered no additional instructions" on the issue of the defense of mistake of fact as to consent. *Davis*, 79 M.J. at 332.

Furthermore, during the fourth exchange regarding findings instructions the following day, Appellant specifically

asked the military judge to include in the record a copy of his emailed objection regarding the silence and concealment instruction. Consequently, it is apparent that Appellant knew how to preserve objections to findings instructions. And yet, Appellant made no objection whatsoever regarding the absence of a mistake of fact as to consent instruction. Thus, it is at this stage in the proceedings that the posture of this issue becomes clear: Appellant never requested a mistake of fact as to consent instruction and never objected to the absence of such an instruction. To the contrary, he " 'expressly and unequivocally acquiesc[ed]' to the military judge's instructions," and as such, "waived all objections to the instructions" with respect to mistake of fact as to consent on appeal. *Davis*, 79 M.J. at 332 (quoting *Smith*, 2 C.M.A. at 442, 9 C.M.R. at 72).

Appellant cemented his position on this issue by stating on the record that apart from the silence and concealment instruction, he had no other objections; telling the military judge that there were no other matters to discuss before the members were called back into court; and affirmatively declining to object to the findings instructions when they eventually were given to the members.

We note that the instant facts present an even stronger case for waiver than the facts in the most recent *Davis* decision. There, the record was unclear whether the defense even contemplated requesting a mens rea instruction. *Davis*, 79 M.J. at 331. Nevertheless, we found an "*intentional* relinquishment or abandonment of a *known* right" where the appellant twice affirmatively declined to object to the proposed findings instructions. *Id.* at 331–32 (emphasis added) (internal quotation marks omitted) (quoting *Gladue*, 67 M.J. at 313). Here, however, it is evident that Appellant pondered the possibility of requesting a mistake of fact as to consent instruction, but ultimately made no such request. These facts support the conclusion that Appellant made a "deliberate decision" to abandon the mistake of fact as to consent instruction, and thus affirmatively waived the two instructional issues on appeal before this Court. *Campos*, 67 M.J. at 332 (quoting *Cook*, 406 F.3d at 487).

**IV. Conclusion**

We affirm the judgment of the United States Air Force Court of Criminal Appeals.