*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Julian D. SCHMIDT, Sergeant
United States Marine Corps, Appellant

### No. 21-0004
Crim. App. No. 201900043

Argued October 5, 2021—Decided February 11, 2022

Military Judge: Matthew J. Kent

For Appellant: *Tami L. Mitchell*, Esq. (argued); *Lieutenant Megan E. Horst*, JAGC, USN (on brief); *David P. Sheldon*, Esq.

For Appellee: *Lieutenant John L. Flynn IV*, JAGC, USN (argued); *Lieutenant Colonel Christopher G. Blosser*, USMC, *Major Kerry E. Friedewald*, USMC, and *Brian K. Keller*, Esq. (on brief); *Lieutenant Colonel Nicholas L. Gannon*, USMC, and *Lieutenant Gregory A. Rustico*, JAGC, USN.

Judge SPARKS announced the judgment of the Court. Chief Judge OHLSON filed a separate opinion concurring in the judgment, in which Senior Judge ERDMANN joined. Judge MAGGS filed a separate opinion concurring in the judgment, in which Judge HARDY joined.

————————

Judge SPARKS announced the judgment of the Court.

## I. Background

In relevant part, Appellant was charged with committing a lewd act on Jared,[1] a child under sixteen years old, by engaging in indecent conduct by intentionally masturbating in his presence, in violation of Article 120b(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b(c) (2012 & Supp. IV 2013–2017). At trial, Jared testified that, on the night in question, he fell asleep on an air mattress and, later, Jared awoke feeling sick. When he awoke, Jared felt Appellant's

———

[1] The United States Navy-Marine Corps Court of Criminal Appeals opinion referred to the victim as Jared. We adopt the same pseudonym throughout this opinion.

arm on his back. Jared became frightened and pretended to be asleep while sliding away from Appellant onto the floor. Appellant proceeded to hold Jared's right hand and began licking and kissing Jared's fingers. Appellant then made sounds and movements indicative of masturbation. After a few minutes, Appellant made a grunting sound and left the room. Appellant proceeded to take a shower and then, before leaving the house, while Jared was still pretending to be asleep, came over to the foot of the air mattress and prayed aloud for Jared's protection.

During an interrogation by the Naval Criminal Investigative Service (NCIS), Appellant admitted masturbating under a blanket to help him fall asleep. Appellant nodded when the NCIS agent said to him, "I mean, you were laying there, you're like, this kid's sleeping, I'm just going to masturbate to try to go to sleep, you know, take my sleeping pills, whatever, man, everybody does their own thing."

After the close of evidence on findings, the military judge held an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session to discuss his proposed findings instructions. The military judge asked, "Do counsel for either side have any objections to the findings instructions in their current form?" Appellant's trial defense counsel responded, "No, sir." The military judge then asked, "Any requests for instructions that do not appear in the findings instructions?" Appellant's trial defense counsel responded, "No, Your Honor."

In delivering his instructions to the members, the military judge provided the elements of the offense of sexual abuse of a child as follows:

> That on or about 29 August 2016, at or near Carlsbad, California, the accused committed a lewd act upon [Jared] by engaging in indecent conduct, to wit: Masturbating, intentionally done in the presence of [Jared];
>
> That at the time, [Jared] had not attained the age of 16 years; and,
>
> That the conduct amount [sic] to a form of immorality relating to a sexual impurity which is grossly vulgar, obscene, and repugnant to common

> propriety, intends [sic] to excite sexual desires, or deprave morals with respect to sexual relations.

The military judge did not instruct on the defense of mistake of fact as to whether Jared was asleep.

During closing arguments, trial defense counsel argued, in part, that a key issue was whether Appellant masturbated "while he knew there was a kid there that was observing or aware, and he did it with some criminal intent." Later, trial defense counsel argued:

> Masturbating isn't a crime. Masturbating in a room where you think everybody is asleep and no one is watching you and no one is aware, doesn't meet the elements of what they're saying. That is not a crime. Any more than two parents having sexual relations and the kid on the other side of the apartment waking up and walking in. It is not the same thing. Someone in a bunk underneath a blanket while everyone is asleep pitching, touching themselves, and someone just happens to be two bunks down and overhears it, that doesn't mean that you are a child molester.

Finally, trial defense counsel argued, "The kid was in the room. That is not enough. It must be a lewd act. . . . If you are underneath a blanket, masturbating, you cover yourself up, and you think everyone is sleeping, it's dark, it's not a lewd act upon him."

During the panel's deliberations, the members submitted a question to the military judge asking with respect to the offense of sexual abuse of a child, "[W]hat does 'upon' mean and what does 'in the presence of' mean?' " During an Article 39(a), UCMJ, session the military judge informed the parties he intended to answer the question by providing the statutory definition of "lewd act" and then advising that "absent specific legal technical definition, the members are to apply their own common sense understanding [of] the definition of words." When asked whether he had any objection to that instruction, Appellant's trial defense counsel stated, "I do not, sir. There is no definition . . . in the benchbook."

The military judge then instructed the members as follows:

> "Lewd act" is defined as any indecent conduct intentionally done with or in the presence of a child including, via any communication technology, that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or to deprave morals with respect to sexual relations.
>
> . . . .
>
> So when the offense alleges that the accused committed a lewd act upon [Jared], that is, essentially—that is statutory language as articulated in the specification is what he has to had done upon him. So beyond that, you, the members, are in the absence of a more specific legal definition. Members are to apply their common sense and understanding of the term of words and that applies to the terms in the presence of as well.

Contrary to his plea, a panel of members with enlisted representation sitting as a general court-martial convicted Appellant of sexual abuse of a child, in violation of Article 120b(c), UCMJ, 10 U.S.C. § 920b(c). The panel sentenced Appellant to a bad-conduct discharge, confinement for fifteen months, and a reduction to E-1. The convening authority approved the sentence as adjudged.

At the lower court, Appellant contended that the phrase "in the presence of" a victim required the victim's awareness. *United States v. Schmidt*, 80 M.J. 586, 595 (N-M. Ct. Crim. App. 2020). The lower court agreed, finding that the offense of sexual abuse of a child by indecent conduct required that the child be aware of the conduct in order for the conduct to be done "in the presence of" the child. *Id.* at 598. Further, the lower court found that for "indecent conduct to be '*intentionally* done . . . in the presence of a child,' the accused must intend that the child be aware of the conduct." *Id.* (alteration in original) (footnote omitted). As such, where raised by the evidence, an honest mistake of fact as to the child's awareness of the conduct is a defense which must be disproven beyond a reasonable doubt. *Id.* The lower court concluded that the evidence supported that Appellant did not honestly believe Jared was asleep when he masturbated. *Id.* at 598–99.

Next, the lower court found that Appellant waived any objection to the military judge's instructions when trial defense counsel "expressly and unequivocally acquiesce[d] to the military judge's instructions," including both the way he handled the definitions of "upon" and "in the presence of" for the elements of the offense and the lack of an instruction on honest mistake of fact as a defense. *Id*. at 601 (internal quotation marks omitted) (citation omitted).

Finally, Appellant argued that he received ineffective assistance when his counsel failed to object to the military judge's instruction on the definition of "in the presence of." *Id*. at 603 (internal quotation marks omitted). The lower court sua sponte considered trial counsel's additional failure to request the related mistake of fact instruction. *Id*. The lower court assumed, without deciding, that Appellant's counsel was deficient by failing to pursue these instructions, but concluded there was no prejudice because the evidence strongly supported a guilty finding, as Jared clearly was aware of the conduct and the defense of honest mistake of fact rested on thin evidence. *Id*. at 603–04.

We then granted review of three issues:

> I. Whether the phrase "in the presence of" used to define the term 'lewd act' in Article 120b(h)(5)(D) requires the child to be aware of the lewd act or merely that the accused be aware of the child's presence.

> II. Whether Appellant affirmatively waived any objection to the military judge's instructions and the failure to instruct on the affirmative defense of mistake of fact.

> III. Whether, having assumed deficient performance by counsel, the lower court erred in finding no prejudice.

## II. Waiver

Sexual abuse of a child under Article 120b(c), UCMJ, is defined as "commit[ting] a lewd act upon a child." The definition of "lewd act" includes:

> any indecent conduct, intentionally done with or in the presence of a child, including via any communication technology, that amounts to a form

> of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

Article 120b(h)(5)(D), 10 U.S.C. § 920b(h)(5)(D).

The threshold question is whether Appellant affirmatively waived the opportunity to now object to the military judge's instruction to the members on what "in the presence of" means. Whether an appellant has waived an issue is a legal question we review de novo. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)). "[W]aiver is the intentional relinquishment or abandonment of a known right." *Id.* (internal quotation marks omitted) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). "[W]hile we review forfeited issues for plain error, 'we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.'" *Id.* (quoting *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

In *Davis*, we acknowledged our prior precedent holding that, pursuant to Rule for Courts-Martial 920(f), objections to instructions not raised at trial were forfeited, and were subject to plain error review on appeal. 79 M.J. at 332. However, we clarified that where trial defense counsel not only failed to raise an objection to findings instructions, but twice told the military judge that the defense had no objections, the appellant had "affirmatively waived any objection" to the instructions. *Id.* (citations omitted).

In the instant case, the first opportunity for Appellant to object or offer instructions or definitions arose when the parties and the military judge met to discuss the military judge's final instructions on the merits. At this point, it was reasonable to assume that the issue regarding the victim's awareness, or Appellant's mistake as to that fact, had yet to arise. However, during deliberations the members sent a question to the military judge wanting to know what "in the presence of" meant. This was the opportunity trial defense counsel had to either object to what the military judge was going to tell the members, or to offer his own view of what the phrase meant, particularly since he had just argued during closing argument that his client might not have known that

the victim was feigning sleep during Appellant's actions in the room. Because there was no definition set forth in the Benchbook, the military judge indicated to trial defense counsel that he was going to ask the members to rely on their common sense to define the phrase for themselves. Trial defense counsel assented to the military judge's proposal. Thus, the instruction given to the members did not indicate whether the phrase at issue had an awareness requirement on the part of the victim.

In light of *Davis*, this affirmative declination to object to the military judge's definition regarding "in the presence of," would appear to waive Appellant's right to challenge that definition on appeal. However, in *Davis*, we noted that we review a matter for plain error " 'when there is a new rule of law, when the law was previously unsettled, and when the [trial court] reached a decision contrary to a subsequent rule.' " 79 M.J. at 331 (first alteration in original removed) (second alteration in original) (quoting *United States v. Oliver*, 76 M.J. 271, 274 (C.A.A.F. 2017)). At the time of Appellant's trial, it was unsettled whether the phrase "in the presence of" used to define the term "lewd act" in Article 120b(h)(5)(D), UCMJ, required the child to be aware of the lewd act. The statute did not define "in the presence of" and there was no case law interpreting this phrase in Article 120b(h)(5)(D), UCMJ. Thus, there was no binding precedent demonstrating that "in the presence of" required victim awareness. Accordingly, trial defense counsel's failure to object was not waiver given the unsettled nature of the law at the time of Appellant's court-martial.

### III. Plain Error Review

When "an appellant has forfeited a right by failing to raise it at trial, we review for plain error." *Oliver*, 76 M.J. at 274–75 (internal quotation marks omitted) (quoting *Gladue*, 67 M.J. at 313). When claiming that a military judge committed plain error, an appellant has the burden of establishing "(1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Id.* at 275 (internal quotation marks omitted) (citation omitted). "Failure to establish any one of the prongs is fatal to a plain error claim." *Id.* (alteration in original removed) (internal quotation marks omitted) (citation omitted).

The first step in plain error analysis is to determine whether an error occurred at all. Here, did the military judge err by not defining "in the presence of" to mean that the victim had to be aware of the indecent conduct? It is a general rule of statutory construction that if a statute is clear and unambiguous—that is, susceptible to only one interpretation—we use its plain meaning and apply it as written. *United States v. Kohlbek*, 78 M.J. 326, 331 (C.A.A.F. 2019). We may also resort to case law to resolve any ambiguity, although fundamentally "case law must comport with [the statute], not vice versa." *United States v. Warner*, 62 M.J. 114, 120 n.30 (C.A.A.F. 2005). "We assume that Congress is aware of existing law when it passes legislation." *United States v. McDonald*, 78 M.J. 376, 380 (C.A.A.F. 2019) (internal quotation marks omitted) (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)).

The definition of "in the presence of" required under Article 120b(c), UCMJ, is an issue of first impression for this Court. As noted by the lower court, the use of " 'in the presence of' was adopted and developed in the context of the offense of indecent liberties with a child under Article 134, UCMJ—the predecessor to the sexual abuse of a child by indecent conduct under Article 120b(c)[, UCMJ]." *Schmidt*, 80 M.J. at 596. In *United States v. Brown*, 3 C.M.A. 454, 457, 13 C.M.R. 10, 13 (1953), we determined that the "purpose of this type of legislation [indecent liberties with a child] is to protect children under a certain age from those acts which have a tendency to corrupt their morals." In *United States v. Knowles*, 15 C.M.A 404, 405-06, 35 C.M.R. 376, 377–78 (1965), in the context of obscene language conveyed over the telephone, we found that for an allegation of indecent liberty to stand, the phrase "in the presence of" a minor "requires greater conjunction of the several senses of the victim with those of the accused than that of hearing a voice over a telephone wire." In *United States v. Miller*, 67 M.J. 87, 90 (C.A.A.F. 2008), we held that conduct done in the child's constructive presence via internet-based, audiovisual communication was also not "in the presence of" the child. In *Miller*, we noted that "[t]he definition and common understanding of 'presence' is: '[t]he state or fact of being in a particular place and time' and '[c]lose physical proximity

coupled with awareness.' " *Id.* (second and third alterations in original) (quoting *Black's Law Dictionary* 1221 (8th ed. 2004)).

The current version of this offense is now codified as a sexual abuse of a child by indecent conduct. The definitional language under which Appellant was convicted is much the same as that used in the former indecent liberties offense, with one key difference: in the current statute, Congress filled the gap created by *Knowles* and *Miller* by more broadly defining "in the presence of" a child as "including via any communication technology." Article 120b(h)(5)(D), UCMJ. Thus, sexual abuse of a child by indecent conduct now does not require physical presence and may be accomplished by purely constructive presence, such as through the sort of internet-based, video-communication technology at issue in *Miller*, or over a telephone line as in *Knowles*.

Therefore, as to the offense of sexual abuse of a child, I conclude that for the conduct at issue to be done "in the presence of" a child, the child must be aware of it. This interpretation comports with our long-standing view that the "purpose of this type of legislation is to protect children under a certain age from those acts which have a tendency to corrupt their morals." *Brown*, 3 C.M.A. at 457, 13 C.M.R. at 13. The focus of the revised statute thus remains on prohibiting indecent and immoral conduct that causes the sort of corrupting harm to children—shame, embarrassment, humiliation, juvenile delinquency—which can occur by the conduct merely being done in their presence (including via communication technology). In order for conduct to cause that type of harm to a child, there must be a sufficient "conjunction of [at least one] sense[] of the victim with those of the accused," that makes the child aware of the conduct. *Knowles*, 15 C.M.A. at 406, 35 C.M.R. at 378. Accordingly, I find the military judge erred by not defining "in the presence of" a child to include awareness.

Although I conclude there was error in this case, I would hold that the error was not plain or obvious. An "error cannot be plain or obvious if the law is unsettled on the issue at the time of trial and remains so on appeal." *United States v. Nieto*, 66 M.J. 146, 151 (C.A.A.F. 2008) (Stucky, J., concurring) (citing *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455–

56 (5th Cir. 2005); *United States v. Diaz*, 285 F.3d 92, 96 (1st Cir. 2002)). As noted above, this Court has never held one way or the other whether the phrase "in the presence of" used to define the term "lewd act" in Article 120b(h)(5)(D), UCMJ, requires the child to be aware of the lewd act. Since the law was and remains unsettled, I cannot say that the error was plain or obvious. Appellant is therefore unable to meet the plain error standard.[2] For this reason, I concur in affirming the decision of the United States Navy-Marine Corps Court of Criminal Appeals.

### IV. Conclusion

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

[2] Appellant's failure to show plain error is fatal to his ineffective assistance of counsel claims. To establish ineffective assistance of counsel, an "appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citations omitted). Appellant cannot demonstrate that his counsel's failure to object to the military judge's instruction on "in the presence of" was deficient when there is no plain or obvious error.

Chief Judge OHLSON, with whom Senior Judge ERDMANN joins, concurring in the judgment.

I agree with Judge Sparks that this is not a waiver case. However, I part ways with him in terms of the proper interpretation of Article 120b(h)(5)(D), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b(h)(5)(D) (2018). In relevant part, this provision prohibits servicemembers from intentionally engaging in indecent conduct—such as masturbating—"*in the presence of* a child." (Emphasis added.) In my view, the plain language of the statute only requires an accused who is intentionally engaging in a lewd act to be aware of the child's *presence*; it does *not* require the child victim to be *aware* of the accused's lewd act. Therefore, I believe the military judge properly instructed the court-martial panel and I would affirm Appellant's conviction.

## I. Applicable Statute

Article 120b(c), UCMJ, makes it a crime to "commit[] a lewd act upon a child." That statute defines a "lewd act" as, among other acts:

> [A]ny indecent conduct, *intentionally done with or in the presence of* a child, including via any communication technology, that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

Article 120b(h)(5)(D), UCMJ (emphasis added).

## II. Analysis

Appellant does not contest the notion that masturbating can constitute "indecent conduct." Therefore, the initial question we must answer is whether the phrase "intentionally done . . . in the presence of a child" requires the child victim to be aware of the lewd act, or only requires the accused to be aware of the child's presence. Article 120b(h)(5)(D), UCMJ. "The construction of a statute is a question of law we review de novo." *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018).

The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) concluded that in order for an accused to

be convicted under Article 120b(c): first, the child victim had to be aware of the accused's conduct; and, second, the accused had to intend for the child to be aware of the accused's conduct. *United States v. Schmidt*, 80 M.J. 586, 598 (N-M. Ct. Crim. App. 2020). Appellant similarly argues that "[t]he history of case law defining 'in the presence of a child' establishes that 'victim awareness' of the indecent conduct through a sensory connection has always been required." Brief for Appellant at 9, *United States v. Schmidt*, No. 21-0004 (C.A.A.F. June 23, 2021).

Both the holding of the NMCCA and the argument by Appellant pivot on one of the definitions of "presence" that appears in *Black's Law Dictionary*.[1] This definition is also cited in multiple previous decisions of the service Courts of Criminal Appeals (CCAs), as well as in this Court's decision in *United States v. Miller*, 67 M.J. 87, 90 (C.A.A.F. 2008).[2] In turn, both the NMCCA and Appellant in the instant case rely heavily upon these prior cases. *Schmidt*, 80 M.J. at 596–97. Thus, it is instructive to examine in depth the definition of the word "presence."

The entry for "presence" in *Black's Law Dictionary* reads as follows:

> 1. The quality, state, or condition of being in a particular time and place, particularly with reference to some act that was done then and there <his presence at the scene saved two lives>. 2. Close

---

[1] The NMCCA's reliance on cases such as *United States v. Brown*, 3 C.M.A. 454, 13 C.M.R. 10 (1953), which involved the offense of "indecent acts," is misplaced. The statute at issue in the *Brown* case required an accused to commit a wrongful act "with" another person. *Id.* at 456, 13 C.M.R. at 12. "With" another person and "in the presence of" another person are clearly distinguishable modes of liability in this statute.

[2] *See, e.g.*, *United States v. Burkhart*, 72 M.J. 590, 594–95 (A.F. Ct. Crim. App. 2013); *United States v. Gould*, No. ARMY 20120727, 2014 CCA LEXIS 694, at *2, 2014 WL 7242761, at *1 (A. Ct. Crim. App. Sept. 16, 2014) (unpublished), *rev'd in part on other grounds*, 75 M.J. 22 (C.A.A.F. 2015); *United States v. Anderson*, No. NMCCA 201200499, 2013 CCA LEXIS 517, at *15–16, 2013 WL 3242397, at *5 (N-M. Ct. Crim. App. June 27, 2013) (unpublished).

physical proximity coupled with awareness <the agent was in the presence of the principal>.

*Black's Law Dictionary* 1432 (11th ed. 2019). Appellant points to the second portion of this entry that refers to proximity "*coupled with awareness.*" *Id.* (emphasis added). Specifically, he argues that: (1) as applied to the facts in the instant case, this particular definition from *Black's Law Dictionary* required the child victim to be aware that Appellant was masturbating next to him in order for Appellant to be guilty of the offense of sexual abuse of a child; (2) because Appellant honestly believed that the child victim was asleep when Appellant was masturbating, "the military judge was obligated to instruct the panel members that an honest mistaken belief [that the victim] was sleeping constituted a defense that absolved [Appellant] of criminal liability," Brief for Appellant at 19, *United States v. Schmidt*, No. 21-0004 (C.A.A.F. June 23, 2021); and (3) because the military judge failed to give such an instruction, "this Court should set aside and dismiss [Appellant's] conviction." *Id.* at 28.

Appellant is mistaken on a number of fronts. Although *Black's Law Dictionary* may be the preeminent source for definitions of legal terms and phrases, when a word has an easily graspable definition outside of a legal context, authoritative lay dictionaries may also be consulted.[3] *See Brackett v. Focus*

---

[3] Notably, even other legal dictionaries do not define the word "presence" in such a manner as to require awareness. *See Ballentine's Law Dictionary* 981 (3d ed. 1969) (defining "presence," in relevant part, as "[t]he fact of being at a place at a particular time"); 3 *Bouvier's Law Dictionary and Concise Encyclopedia* 2673 (8th ed. 1914) (defining "presence" as "[t]he being in a particular place"). The explanation accompanying the definition in *Bouvier's Law Dictionary and Concise Encyclopedia* acknowledges the usage relied on by the NMCCA and Appellant, but notes that it is a legal term of art. *See id.* ("In many contracts and judicial proceedings it is necessary that the parties should be present in order to render them valid . . . ."). *Ballentine's Law Dictionary* cites case law to similar effect: "Anything done within the four walls of a room . . . is usually done in the presence of all who are in the room whether it is seen or not. But proximity and consciousness may create presence." *Ballentine's Law Dictionary* 981 (3d ed. 1969) (citing *Nock v. Nock's Ex'rs*, 51 Va. (10 Gratt.) 106, 117 (1853)).

*Hope, Inc.*, 753 N.W.2d 207, 211 (Mich. 2008) ("A lay dictionary may be consulted to define a common word or phrase that lacks a unique legal meaning."). Here, a number of authoritative lay dictionaries do not require awareness in order for one person to be in the presence of another person.[4]

Further, while both legal and lay dictionaries can be eminently helpful and instructive in the course of interpreting statutes, a definition contained in a dictionary—standing alone—is not dispositive of the legal issue of what a provision in a statute actually means. "Whether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion). Rather, whether a statute is plain or ambiguous "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

As noted above, the definition of "presence" contained in *Black's Law Dictionary* has two separate entries. The primary definition of the word is: "The quality, state, or condition of being in a particular time and place, particularly with reference to some act that was done then and there . . . ." *Black's Law Dictionary* 1432 (11th ed. 2019). The secondary definition is: "Close physical proximity coupled with awareness . . . ." *Id.* Appellant fails to explain why *both* entries should apply to the disposition of this case. "[W]e interpret words and phrases used in the UCMJ by examining the ordinary meaning of the language, *the context in which the language is used*,

---

[4] *See Merriam-Webster's Unabridged Online Dictionary*, https://unabridged.merriam-webster.com/unabridged/presence (last visited Jan. 27, 2022) (defining "presence," in relevant part, as "the state of being in one place and not elsewhere[,] the condition of being within sight or call, at hand, or in a place being thought of[, or] the state of being in front of or in the same place as someone or something"); *The American Heritage Dictionary of the English Language* 1393 (5th ed. 2018) (defining "presence," as "[t]he state or fact of being present" and "present," in relevant part, as "[b]eing at hand or in attendance"); *Merriam-Webster's Collegiate Dictionary* 982 (11th ed. 2020) (defining "presence," in relevant part, as "the part of space within one's immediate vicinity").

and the broader statutory context." *United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016) (emphasis added).[5] In making a choice between two competing definitions, if only one of the definitions gives effect to the clear statutory purpose, then that definition must be the one intended by Congress.[6]

In relying on the second definition of "presence" that appears in *Black's Law Dictionary*, Appellant, the lower court here, and CCAs in prior cases have failed to take note of the material contained in the adjoining angle brackets. The prefatory material in *Black's Law Dictionary* explains that information contained within angle brackets provides "[*c*]*ontextual* illustration of a headword."[7] *Black's Law Dictionary* xxix (11th ed. 2019) (emphasis added). Here, the material contained in the angle brackets accompanying the second definition of "presence" informs us that the awareness requirement arises in the context of the following example: "[T]he agent was in the presence of the principal." *Id.* at 1432. This illustration makes clear that the type of presence connoted by the second definition is that which is required for certain events

---

[5] For example, the verb form of the word "sanction" can mean to give official approval of an action *or* to impose a penalty for an unapproved action. *See Merriam-Webster's Unabridged Online Dictionary*, https://unabridged.merriam-webster.com/unabridged/sanction (last visited Jan. 27, 2022) (defining "sanction" as both "to establish, maintain, encourage, or permit usually by some authoritative approval or consent" and "to attach a sanction or penalty to [a] violation"). These two definitions are highly dissimilar, and without examining the use of the word "sanction" in context, it would be difficult indeed for a court to reconcile both of them in a statutory provision. As can be seen then, in the course of analyzing a statutory provision, a court must sometimes choose between competing definitions of the same word.

[6] To be sure, an accused gets the benefit of ambiguity in a criminal statute. However, "[w]here Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent." *Albernaz v. United States*, 450 U.S. 333, 342 (1981) (internal quotation marks omitted) (citation omitted).

[7] Another entry in *Black's Law Dictionary* underscores this point; the "presence-of-the-testator rule" is defined as "[t]he principle that a testator must be aware . . . that the witnesses are signing the will." *Black's Law Dictionary* 1432 (11th ed. 2019).

of particular legal significance, such as the binding of a principal or the attestation of a will. *See N. Owsley & Sons v. Woolhopter*, 14 Ga. 124, 128 (1853) ("[I]f one, in the presence of the principal, sell[s] a parcel of goods of the latter, as his agent, without objection, the tacit consent of the principal will be presumed; and it will bind him."); *In re Estate of Meyer*, 2016 WY 6, ¶ 28, 367 P.3d 629, 638 (Wyo. 2016) ("[T]he will must be signed by the testator in the presence of both witnesses, and the signatures of both witnesses must be made in the presence of the testator and in the presence of each other . . . ."). Of course, a scenario where an adult male is masturbating—knowing that a child is within arm's reach—is in no way similar to a principal-agent relationship. Therefore, it is the first definition of "presence" in *Black's Law Dictionary*—and all of the similar definitions in lay dictionaries—that should guide us in the instant case. And in that definition, there is no implication that "awareness" is required for one person to be "in the presence of" another.

Appellant is correct that this Court's opinion in *Miller* refers not only to the first definition of "presence" in *Black's Law Dictionary* but also to the second definition. 67 M.J. at 90. However, in that case the Court was interpreting whether "constructive presence" constituted "physical presence"; it was not deciding any issue involving whether "presence" requires awareness. *Id.* Thus, the most that can be said about the *Miller* case is that the Court *cited* the second definition from *Black's Law Dictionary*, not that it *relied* upon that second definition or that the second definition played a central role in the disposition of the case. In fact, the *Miller* Court held that "physical presence" merely "requires that an accused be in the same physical space as the victim." *Id.* Therefore, *Miller* actually serves to undermine Appellant's position.

In their analyses of similar federal statutes, other courts have recognized that Congress did not intend to offer safe haven to sexual predators simply because their victims have been caught unawares. In *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013), the United States Court of Appeals for the Third Circuit interpreted a federal statute that, among other things, criminalizes "us[ing] . . . any minor to engage in . . . sexually explicit conduct." 18 U.S.C. § 2251(a) (2018). That court recognized that "a perpetrator can 'use' a minor to

engage in sexually explicit conduct without the minor's conscious or active participation." *Finley,* 726 F.3d at 495. The court therefore believed that "[i]t would be absurd to suppose that Congress intended the statute to protect children actively involved in sexually explicit conduct, but not protect children who are passively involved in sexually explicit conduct while sleeping, when they are considerably more vulnerable." *Id.* Similarly, in *United States v. O'Neal*, the United States Court of Appeals for the Sixth Circuit stated: "Even if the minor is unaware of the masturbation (perhaps because the child is asleep), such conduct creates serious risks anyway because the child could wake up or find out about it after the fact." 835 F. App'x 70, 72 (6th Cir. 2020).

Finally, interpreting the word "presence" to have its ordinary meaning for purposes of Article 120b(h)(5)(D), UCMJ, would not present a particular danger of prosecutorial overreach. Conduct is "indecent" for purposes of this article only when it "amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety." Article 120b(h)(5)(D), UCMJ; *see also United States v. Rollins*, 61 M.J. 338, 344 (C.A.A.F. 2005) ("The determination of whether an act is indecent requires examination of all the circumstances . . . .").

For all these reasons, it is clear to me that Congress did not intend the meaning of the phrase "in the presence of" in Article 120b(h)(5)(D) to include any element of "awareness." For purposes of this article, the phrase simply means that one person is in the immediate vicinity of another person. Because "the language at issue has a plain and unambiguous meaning" and "the statutory scheme is coherent and consistent," our role of judicial interpretation is at an end. *Robinson,* 519 U.S. at 340 (internal quotation marks omitted) (citation omitted).

### III. Conclusion

The military judge adequately and accurately summarized the law when he instructed the members to apply the common definitions of the statute's words and phrases—to include "in the presence of"—and when he declined to provide a mistake of fact instruction. Because the military judge did not

err, we do not need to address the third granted issue pertaining to whether there was ineffective assistance by trial defense counsel. In regard to the second granted issue, as I noted at the outset, I agree with Judge Sparks that there was no waiver here.[8]

Accordingly, as to Issue I, I would hold that the phrase "in the presence of" does not require that the child be aware of the lewd act, only that the accused be aware of the child's presence. Additionally, I would answer Issue II in the negative, and hold that Issue III is moot.

---

[8] Appellant expressly argued at trial that his actions did not amount to a crime. In closing, Appellant's counsel argued to the members that "[m]asturbating in a room where you think everybody is asleep and no one is watching you *and no one is aware*, doesn't meet the elements of what they're saying. That is not a crime." (Emphasis added.) Appellant renewed this argument before the lower court. *Schmidt*, 80 M.J. at 595 ("Appellant asserts the evidence is insufficient as to the first element[:] that he committed a lewd act *upon* Jared by masturbating, *intentionally* done *in the presence of* Jared."). Appellant now argues this point before this Court, asking us to consider: "Whether the phrase 'in the presence of' used to define the term 'lewd act' in Article 120b(h)(5)(d) requires the child to be aware of the lewd act or merely that the accused be aware of the child's presence." *United States v. Schmidt*, 81 M.J. 240 (C.A.A.F. 2021) (order granting review). Therefore, regardless of whether Appellant acquiesced to the military judge's instruction, I do not believe he has waived or forfeited his core argument that "presence" connotes "awareness" for purposes of Article 120b(h)(5)(D).

Judge MAGGS, with whom Judge HARDY joins, concurring in the judgment.

A general court-martial found Appellant guilty of one specification of sexual abuse of a child in violation of Article 120b(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b(c). The specification alleged, in relevant part, that Appellant had committed a "lewd act" upon a child "by engaging in indecent conduct, to wit: masturbating, intentionally done *in the presence of*" that child. (Emphasis added.) Appellant contends before this Court that the military judge incorrectly instructed the members about this specification and that his civilian defense counsel was ineffective for failing to object.

We have granted review of three assigned issues:

> I. Whether the phrase "in the presence of" used to define the term "lewd act" in Article 120b(h)(5)(D) requires the child to be aware of the lewd act or merely that the accused be aware of the child's presence.

> II. Whether Appellant affirmatively waived any objection to the military judge's instructions and the failure to instruct on the affirmative defense of mistake of fact.

> III. Whether, having assumed deficient performance by counsel, the lower court erred in finding no prejudice.

*United States v. Schmidt*, 81 M.J. 240 (C.A.A.F. 2021) (order granting review).

My views on the first two of these assigned issues differ from those expressed by the authors of the other opinions in this case. Unlike Judge Sparks and Chief Judge Ohlson, I answer Assigned Issue II in the affirmative, concluding that Appellant waived any objection to the military judge's instructions. Because I find waiver, I do not answer Assigned Issue I. But in accordance with the other Judges, I answer Assigned Issue III in the negative. I therefore concur in the judgment of the Court and would affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA), which affirmed the findings and sentence in this case. *United States v. Schmidt*, 80 M.J. 586, 603–04 (N-M. Ct. Crim. App. 2020).

## I. Waiver

Under Article 120b(c), UCMJ, an accused may commit the offense of sexual abuse of a child by performing "a *lewd act* upon a child." (Emphasis added.) As defined in Article 120b(h)(5)(D), UCMJ, the term "lewd act" means:

> any indecent conduct, intentionally done with or *in the presence of a child* . . . that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

*(*Emphasis added.) Although this definition requires the Government to prove that the accused committed indecent conduct "in the presence of" a child, the UCMJ provides no definition of "in the presence of." Appellant contends that the phrase "in the presence of" implicitly requires the Government to prove that the child was aware that Appellant was masturbating and that the military judge erred by not so instructing the members. The Government responds, in part, by arguing that Appellant waived any objection to the findings instructions.

To support its waiver argument, the Government argues that this case is indistinguishable from *United States v. Davis*, 79 M.J. 329 (C.A.A.F. 2020). In *Davis*, the appellant was charged with violating Article 120c(a)(2), UCMJ, 10 U.S.C. § 920c(a)(2) (2012). *Davis*, 79 M.J. at 330. This article makes it an offense to record "knowingly . . . the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy." Article 120c(a)(2), UCMJ. At trial, the military judge presented proposed findings instructions to counsel before giving the instructions to the members. *Davis*, 79 M.J. at 331. The military judge twice asked whether counsel desired any changes. *Id.* Trial defense counsel responded by saying " 'No changes, sir' " and " 'No, Your Honor.' " *Id.*

On appeal, the appellant in *Davis* argued Article 120c(a)(2), UCMJ, requires the prosecution to prove beyond a reasonable doubt that he subjectively *knew* the alleged victim was not consenting and that the military judge had erred by not so instructing the panel. *Davis*, 79 M.J. at 331. This Court

did not decide the merits of the appellant's argument because it concluded that the appellant had waived the issue. *Id.* at 332–33. The Court ruled: "By 'expressly and unequivocally acquiescing' to the military judge's instructions, Appellant waived all objections to the instructions, including in regards to the elements of the offense." *Id.* at 332 (quoting *United States v. Smith*, 2 C.M.A. 440, 442, 9 C.M.R. 70, 72 (1953)).

In the present case, Appellant was charged with sexual abuse of a child in violation of Article 120b(c), UCMJ. As in *Davis*, the military judge presented proposed findings instructions to counsel before reading the instructions to the members. The military judge asked counsel whether they had any objections to the proposed findings instructions. Civilian defense counsel responded, "No, sir." The military judge also asked counsel whether they wished to request additional instructions. Civilian defense counsel responded, "No, Your Honor." The military judge then gave the findings instructions to the members. During deliberations, the members asked the military judge to define the words "upon" and "in the presence of." The military judge proposed to counsel that he would reread the definition of "lewd act" and instruct the members to apply their commonsense understanding of the words. The military judge then asked counsel if they had any objections. Civilian defense counsel said: "I do not, sir." On appeal, however, Appellant now contends that the military judge should have instructed the members that the term "in the presence of" required the Government to prove that the child was aware of the fact that Appellant was masturbating.

As these descriptions show, the present case is indistinguishable from *Davis*. In both cases, when provided the opportunity to object to proposed findings instructions and to suggest additional instructions, defense counsel expressly told the military judge that the defense had no objection and the defense did not request additional instructions. On appeal, both appellants then faulted the military judge for not defining an element of an offense in a particular way. Because the Court found waiver in *Davis*, I would reach the same conclusion in this case. "By 'expressly and unequivocally acquiescing' to the military judge's instructions, Appellant waived all objections to the

instructions, including in regards to the elements of the offense." *Davis*, 79 M.J. at 332 (quoting *Smith*, 2 C.M.A. at 442, 9 C.M.R. at 72).

Two counterarguments to this conclusion deserve attention. The first is that this Court in *Davis* incorrectly construed the trial defense counsel's statement of "no objection" as a waiver rather than a forfeiture and that the Court should not repeat the error in this case. Appellant contends: "In this context, 'no objection' means a failure to object, because an attorney cannot stand mute when called upon to answer the military judge's question." So construed, Appellant contends, a mere failure to object would only be a forfeiture, which would allow for plain error review.

I disagree for three reasons. First, as the Court explained in *Davis*, "Appellant did not just fail to object and thereby merely forfeited his claim. He affirmatively declined to object to the military judge's instructions and offered no additional instructions." *Davis*, 79 M.J. at 332. In contrast, if the military judge had not asked whether counsel wanted additional instructions, and counsel simply had remained silent, then that would have been a forfeiture. *See, e.g., United States v. Easterly*, 79 M.J. 325, 327 (C.A.A.F. 2020) (construing defense counsel's failure to ask for a sentencing instruction on the impact of a punitive discharge as a forfeiture rather than a waiver where "[n]either party requested an instruction" and the "military judge did not ask the parties if they wanted such an instruction").

Second, although Appellant is correct in asserting that trial defense counsel generally cannot "stand mute" when a military judge asks a question, nothing in the Rules for Courts-Martial (R.C.M.) prevents the military judge from requiring the parties to take a position on a legal issue arising in the court-martial. On the contrary, the R.C.M. contemplate that the military judge will require answers from counsel. For example, R.C.M. 920(f) provides: "The military judge may require the party objecting [to instructions] to specify of what respect the instructions given were improper."

Third, allowing trial defense counsel to tell the military judge one thing (i.e., "I have no objection to the instructions") and then allowing appellate defense counsel to assert

something else on appeal (i.e., "the instructions were incorrect") would go against the general prohibition against taking inconsistent litigation positions. *See* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4477 (2d ed. 1992 & Supp. 2021) ("Absent any good explanation, a party should not be allowed to gain an advantage by litigating on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."). Here, Appellant has not offered a convincing justification for allowing his inconsistent positions.

The other counterargument is that Appellant could not intentionally relinquish the right that he now claims—namely, the right to have the members instructed that the Government must prove that the child was aware of the lewd act—because precedent has not yet established whether this right exists. Although Appellant does not specifically make this argument in his briefs, Judge Sparks explains and accepts the argument. *United States v. Schmidt*, __ M.J. __– __ (6)–(7) (C.A.A.F. 2022) (Sparks, J., opinion announcing the judgment of the Court).

A lack of applicable precedent, however, does not negate the waiver in this case because a similar lack of applicable precedent did not negate the waiver in *Davis*. The issue in *Davis*—namely, whether Article 120c(a)(2), UCMJ, requires the prosecution to prove beyond a reasonable doubt that the accused subjectively knew the alleged victim was not consenting—was also unresolved at the time of the trial and the appeal. *Davis*, 79 M.J. at 331. This Court, however, did not see the lack of precedent as a ground for treating the objection as a forfeiture subject to plain error review rather than as a waiver. Instead, the Court specifically explained: "We generally only review the matter for plain error when a new rule of law exists, as '[a]n appellant gets the benefit of changes to the law between the time of trial and the time of his appeal.'" *Id.* at 332 (alteration in original) (quoting *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019)). The Court in *Davis* ruled that the appellant could not take advantage of that principle because he "was tried after the applicable precedents were decided." *Id.* (footnote omitted).

The same analysis applies in this case. All the authorities that Appellant cites in support of his argument predate his

trial. Indeed, Appellant's principal argument is that military courts "historically" have defined the term "in the presence of" to require a victim's awareness. Appellant is thus not asking for the benefit of a new rule announced during the pendency of his appeal, and is therefore not entitled to plain error review.

For these reasons, I would answer Assigned Issue II in the affirmative, concluding that Appellant waived his argument that victim awareness was required. Because of this waiver, I express no opinion on the merits of Appellant's argument about the meaning of the phrase "in the presence of" in Article 120b(h)(5), UCMJ. *See United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (" '[W]e cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.' " (quoting *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005))). I therefore do not answer Assigned Issue I.

### II. Ineffective Assistance of Counsel

Assigned Issue III raises the question whether civilian defense counsel provided ineffective assistance in violation of the Sixth Amendment. Under the familiar test in *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on an ineffective assistance of counsel claim, an appellant must prove both that trial defense counsel's performance was deficient and that the deficiency caused prejudice. *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland*, 466 U.S. at 698). Our role in reviewing such a claim is constrained. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

In this case, the NMCCA held that even assuming that counsel's performance was deficient, Appellant could not establish prejudice. *Schmidt*, 80 M.J. at 603–04. I agree with the NMCCA's analysis and conclusion. I therefore would answer Assigned Issue III in the negative.

I would add only that it is by no means certain that civilian defense counsel's performance was deficient. The text of Article 120b(h)(5)(D), UCMJ, does not *clearly* require such awareness. To be sure, in some cases, when one person does

something "in the presence of" another person, the latter person is aware of the former person's action. *See, e.g., United States v. Miller*, 67 M.J. 87, 90 (C.A.A.F. 2008) (defining "presence" as "close physical proximity coupled with awareness" (internal quotation marks omitted) (quoting *Black's Law Dictionary* 1221 (8th ed. 2004))). But this is not always so. For example, Article 99, UCMJ, provides that "[a]ny member of the armed forces who before or *in the presence of the enemy*" does certain improper acts commits the offense of misbehavior before the enemy. 10 U.S.C. § 899(1)–(9). These improper acts include running away, casting away arms or ammunition, quitting a place of duty to plunder or pillage, and so forth. *Id.* In cases charging the accused with violating Article 99, UCMJ, this Court has not required the government to prove that the enemy was aware that the accused committed these acts. *See, e.g., United States v. Sperland*, 1 C.MA. 661, 663, 5 C.M.R. 89, 91 (1952) (construing "in the presence of the enemy" to mean "situated . . . within effective range of the enemy weapons"). Because no court had held that Article 120b(h)(5)(D), UCMJ, requires victim awareness at the time of Appellant's court-martial—a question that remains unresolved today—there is a very substantial argument that counsel was not deficient for failing to raise the issue.

### III. Conclusion

For these reasons, I concur in the judgment to affirm the NMCCA.